### NPS ENERGY SERVICES, INC., Plaintiff,

v.

### CONSUMERS ENERGY CO., Defendant.

No. 99–72294.

United States District Court, E.D. Michigan, Southern Division.

Aug. 14, 2000.

Margaret A. Lynch, Kell & Lynch, PC, Birmingham, MI (Kerry S. Sullivan, Edmund M. O'Toole, Sullivan & Heard LLP, New York City, of counsel), for Plaintiff.

Michael G. Wilson, James E. Brunner, Consumers Energy Co., Jackson, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

In 1996 Consumers Energy Co. (Consumers) entered into a non-exclusive General Services Agreement (GSA) for general maintenance work on its Michigan fossil fuel plants with NPS Energy Services, Inc. (NPS). Under the GSA, Consumers authorized each job through a separate purchase order. One such purchase order was for general maintenance work at Consumers' Karn plant during the Karn plant's scheduled shutdown.

NPS' estimated cost of the work for the Karn plant was $4,243,471.00. By the time the project was completed, however, the cost totaled over $7 million. Consumers refused to pay the overrun, citing §§ 6 and 13 of the GSA, which require prior written authorization for all scope changes and overtime, respectively.

NPS brought this action to recover its total charge for the Karn work.[1] NPS states that the contract was made on a time and materials basis.

Before me are cross motions for summary judgment; in both motions the issue is whether the contract for the Karn work was made on a time and materials basis, and whether the time and material costs were subject to any restrictions in the GSA.

## I. Background

Consumers is a Michigan corporation headquartered in Jackson, Michigan. Consumers provides energy services to Michigan residents and owns and operates several nuclear and fossil fuel power and coal processing plants throughout the state. It has contracts with several contractors for the maintenance of its fossil fuel plants.

NPS is a Delaware corporation headquartered in Pennsylvania. NPS provides plant maintenance and modification work to several industries, including the power industry.

In October 1996 Consumers and NPS entered into a GSA which provided for maintenance and repair services at fossil fuel energy plants in Michigan. On September 25, 1998, Consumers issued a purchase order pursuant to the GSA to NPS for work needed at the Karn plant. The purchase order states in part:

> The price of $4,243,471.00 is documented in memo from contractor's Donald Ackerman to E Taylor dated 8/26/98 and incorporated herein. This price includes a fee which will be based on the contractor's performance in accordance with the "Performance Incentive Rating for the D E Karn # 2 1998 Fall Outage" incorporated herein.... The final price will be adjusted based on the contractor's performance.

The memorandum by Donald Ackerman (Ackerman), the NPS Project Manager, to which the purchase order refers also states that the job will be performed on a time and materials basis. Both Ackerman's memorandum and the Karn purchase order incorporate the GSA.

The GSA limits how NPS can change the price of the September 25 purchase order. Section 6, entitled "Changes in the Work", states:

> The Owner may, at any time, without invalidating this Contract, make changes in, add to or delete from the work to be performed under any purchase order hereunder. No such changes shall be valid *except as authorized by written order signed by the Owner.* (Emphasis added.)

Further, § 13 of the GSA, "Overtime", also serves as a cost control measure:

> No overtime shall be performed on the work under any purchase order hereunder and no claim therefor shall be valid, unless authorized in writing by the Owner before the overtime is performed. Overtime which does not result in any extra charge to the Owner may be authorized orally. Overtime is all time in excess of eight (8) hours per person per day or in excess of forty (40) hours per person per week and any other time for which a rate higher than a straight time rate will be charged to the Owner pursuant to this Contract.

Consumers issued a Memorandum of Change to the original Karn purchase order on February 25, 1999, increasing the price from $4,243,471.00 to $4,414,033.22. This change incorporated thirty-six different changes presented to and authorized in writing by Consumers, pursuant to § 6 of the GSA.

Consumers has paid NPS over four million dollars. It states the amount paid is the amount in the Memorandum of

---

**1.** NPS's complaint encompasses other allegations as well, but this opinion is limited to Count II of the complaint, breach of contract at the Karn plant.

Change, less the unearned performance fee. NPS claims $3,418,000.00 is still due.

## II. Positions of the Parties

NPS contends that the purchase order issued under the GSA is a pure time and materials contract. Thus, NPS claims the full difference between the amount already paid by Consumers and the total cost of the project. NPS contends that NPS and Consumers entered into a time and materials contract for the Karn plant work, that Consumers breached this contract by failing to pay NPS for the time and material costs expended, and that Consumers should pay the remaining $3,418,000.00.

Consumers does not argue that the estimate, and the contract, is on a time and materials basis. Consumers contends, however, that once the parties set the estimate in the purchase order and called it a price, it became a fixed amount. This amount was subject to change only through the authorization procedures required by the contract. Consumers notes the thirty-six times NPS did use the scope change procedures mandated by the GSA, and concludes that the difference in charges is from unauthorized scope changes. Because NPS did extra-contractual work without authorization, Consumers contends it is not bound by the GSA to pay the disputed $3,418,000.00.

## III. Discussion

During the hearing, I asked for cases which most strongly supported each party's position. NPS cited *O'Connor v. Georgia–Pacific Corp.*, 1988 WL 138076 (D.Mass.1988). Consumers cited *Rockwell International Corp. v. Regional Emergency Medical Services*, 688 F.2d 29 (6th Cir. 1982).

The facts in *O'Connor* are remarkably similar to this case. The plaintiff was a general contractor who performed repair and maintenance work during the annual shutdown of the defendant's paper mill. After performing the work, the plaintiff claimed that approximately $350,000 above

the contract price plus change orders was due. One of the issues was whether the contract was a time and materials contract, or, as the defendant argued, that the contract was a fixed price contract because of the price certainty set forth in the contract and a corresponding mandatory written authorization clause. The court found that the nature of the work made it impossible to fix a price before work had begun, and that the estimate was not turned into a fixed price simply by the signing of the contract. It found that both parties had waived the writing requirement for scope changes through the course of performance. Accordingly, the court found that the full amount of the costs was due the plaintiff.

In *Rockwell*, the plaintiff contractor seeking additional compensation argued that the owner requested, agreed to, and had knowledge of the additional work and that such knowledge constituted a waiver of the approved in writing requirement necessitated by their contract. The Sixth Circuit found no evidence of waiver or variance from the contract mandate which required prior written authorization for scope changes; that when a change was made it had been authorized in writing. Other changes had been discussed between the parties, but there was no evidence that the owner had agreed to any extra charges, and that no written authorization existed for the charges. The court concluded that there was no waiver of contract provisions regarding written authorization.

Each of these cases deals with problems which can arise between an owner and a contractor when the cost of the work performed is more than the amount authorized in the original contract. In both cases contracts required scope changes to be submitted and approved prior to performing the work. The cases are compatible; their outcomes were determined by findings whether the parties had enforced

the written authorization requirements throughout their course of performance.

A threshold issue in this case is whether this is a pure time and materials contract. While NPS seems to argue that §§ 6 and 13, *supra,* indicate that Consumers retained some control as to the materials furnished and the time spent, it also contends that all time spent and materials furnished were in accordance with the requirements of §§ 6 and 13. At the hearing, Consumers conceded that the Karn work was under a time and materials contract, but that the additional costs now being charged to them did not comply with these sections' requirements.

This is where the real issue comes into play. NPS argues the additional costs were approved by Consumers. This Consumers denies. This focuses the questions of fact: how much, if any, of the three million dollar overrun was approved by Consumers? Or, in the alternative, were §§ 6 and 13 of the GSA, which limited the liability of Consumers, waived either in whole or in part, over the course of performance of the parties?

I note that these factual questions are extremely detailed. NPS has already submitted numerous invoices and time sheets. Yet the submissions do not answer the basic questions. Accordingly, because of these questions of fact, both motions for summary judgment must be denied.

## IV. Conclusion

For the foregoing reasons, I direct each party to submit to me detailed proposed findings of fact. Each charge contributing to the overrun should be cited as a time cost or a material cost, how and when the charge was approved, or how the approval was waived. The more detailed the findings, the better I will be able to determine if each charge or change was approved. Each party will then be given the chance to respond to the other's findings of fact. After receiving the proposed findings of fact and responses and holding a hearing, I will decide how much, if any, money is due NPS.

IT IS SO ORDERED.